**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DIEGO LIZANO, on behalf of himself and all others similarly situated,

Plaintiff,

v.

LEVITON MANUFACTURING CO., INC.,

Defendant.

Case No.:

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Diego Lizano ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Leviton Manufacturing Co., Inc., ("Leviton" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1. This class action arises from Defendant's failure to properly secure and safeguard Plaintiff's and Class Members' sensitive personally identifiable information[1] ("PII" or "Private Information").

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

1. Defendant is a firm specializing in electrical wiring devices, lighting energy management solutions, networking solutions, security and home automation and commercial data infrastructure products.[2]

2. In or around August 5, 2026, the criminal ransomware group known as "Dark Project" proclaimed that it had accessed Defendant's computer network and then targeted and exfiltrated the Private Information of its current and former employees (the "Data Breach" or "Breach").[3]

3. Plaintiff has since discovered that Dark Matter has added Defendant to its dark web leak site, where his Private Information may be posted for any nefarious actor to view, download, and use to commit crimes against Plaintiff and Class Members, including identity theft and fraud.[4]

4. Defendant has yet to provide direct notice to those impacted, leaving victims in the dark of their increased risk of imminent fraud and identity theft.

5. Defendant failed to adequately protect Plaintiff's and Class Members' Private Information—and failed to even encrypt or redact this highly sensitive information. This unencrypted, unredacted Private Information was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect its employees' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' Private Information because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

---

[2] *Leviton*, LINKEDIN, https://www.linkedin.com/company/leviton/ (last visited August 7, 2026).

[3] *Dark Project*, RANSOMLOOK, https://www.ransomlook.io/group/dark%20project (last visited August 7, 2026).

[4] *Leviton*, RANSOMWARE.LIVE, https://www.ransomware.live/id/TGV2aXRvbkBEYXJrIFByb2plY3Q (last visited August 7, 2026).

6. Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected Private Information using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts at least to negligence and violates federal and state statutes.

7. Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

8. Plaintiff is a former employee of Defendant and a Data Breach victim. He brings this class action on behalf of himself, and all others harmed by Defendant's misconduct.

9. The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before this data breach, Defendant's current and employees' Private Information was exactly that—private. Not anymore. Now, their sensitive data is forever exposed and unsecure.

## PARTIES

10. Plaintiff, Diego Lizano, is a natural person and citizen of New York. He resides in Meadow, New York, where he intends to remain.

11. Defendant, Leviton Manufacturing Co., Inc., is a corporation organized under the laws of Delaware having a principal place of business at 201 North Service Rd., Melville, New York 11747.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Members of the proposed Class are citizens of different states than Defendant,[5] and there are over 100 putative Class members.

13. This Court has personal jurisdiction over Defendant because it is headquartered in New York, regularly conducts business in New York, and has sufficient minimum contacts in New York.

14. Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

**BACKGROUND**

***Defendant Collected and Stored the Private Information of Plaintiff and the Class***

14. Defendant manufactures and markets products in the electrical, lighting, data networking, and energy management industries.[6] Defendant states it has 7,500 employees and

---

[5] Defendant states it operates 22 U.S. locations across 13 states. *See Locations*, LEVITON, https://leviton.com/company/about-leviton/locations (last visited August 7, 2026).
[6] *See About Leviton,* LEVITON, https://leviton.com/company/about-leviton (last visited August 7, 2026).

operates 20 sales offices and 8 warehouses.[7] Defendant also states it has 22 United States locations across 13 states.[8]

15. As part of its operations, Defendant receives and maintains the sensitive Private Information of thousands of its current and former employees.

16. In collecting and maintaining the Private Information, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their Private Information.

17. Under state and federal law, companies like Defendant have duties to protect their current and former employees' Private Information and to notify them about breaches.

18. Defendant recognizes these duties. Indeed, its Privacy Policy states:

a. "Leviton is committed to protecting your privacy;" and

b. "Leviton is committed to protecting your personal information from unauthorized access by having various administrative and technical safeguards in place. Any page run by Leviton that asks you for sensitive information is highly secure."[9]

***Defendant's Data Breach***

19. On or around August 5, 2026, the criminal ransomware group known as Dark Project announced that it had hacked Defendant.[10]

---

[7] *Id*.
[8] *See Locations*, LEVITON, https://leviton.com/company/about-leviton/locations (last visited August 7, 2026).
[9] *Privacy Policy,* LEVITON, https://leviton.com/company/footer/privacy-policy (last visited August 7, 2026).
[10] *See* @CyberWatch, X (Aug. 5, 2026, 9:21 AM), https://x.com/CyberWatch05/status/2085008193634148565.

20. According to cybersecurity firm Security Arsenal, Dark Project operates a Ransomware-as-a-Service ("RaaS") model, with "affiliates" performing the intrusions and leak site centrally operated by core group.[11]

21. Dark Project gains initial access into company's networks using techniques such as VPN appliance exploitation, exposed RDP, phishing with malicious attachments, and abuse of remote access tooling.[12] Once inside, the group focuses on data exfiltration, rather than encryption.[13] Indeed, Dark Project operates a leak site on the dark web, where it publishes stolen data if a company it hacked refuses to pay a ransom demand.[14]

22. According to one cybersecurity specialist, groups like Dark Project steal data first and extort second — and the stolen records rarely stay private.[15] Thus, one an organization's data is published on Dark Project's leak site, that Private Information should be treated as circulating on the dark web.[16]

23. On or around August 5, 2026, Dark Project created a post on its dark web data leak site stating that it had hacked Defendant.[17]

---

[11] *DARK PROJECT Ransomware Gang: 3 New Victims Posted — Energy, Transportation & Automotive Targeting Analysis With Detection Rules*, SECURITY ARSENAL (Aug. 6, 2026), https://securityarsenal.com/blog/dark-project-ransomware-gang-3-new-victims-posted-energy-transportation-and-automotive-targeting-analysis-with-detection-rules.
[12] *Id.*
[13] *Id.*
[14] *See id*.
[15] *Dark Project — every breach we're tracking*, GALAXYWARDEN, https://www.galaxywarden.com/blog/threat/dark-project (last visited August 7, 2026).
[16] *See id*.
[17] *See Leviton*, n. 4, *supra.*




24. Dark Project's post displayed Defendant's name, website URL, www.leviton.com, and a description of Defendant, and the text "A major cyber attack has resulted in the Leviton company losing control over its entire repository of sensitive data, totaling approximately 1.4 terabytes. The massive breach exposed a wide range of highly confidential information, including internal financial records, proprietary project schematics and working documents, as well as the personal data of employees. Additionally a significant quantity of other unclassified but highly sensitive information was exfiltrated in the breach, paint a strake picture of total system compromise."[18]

25. The post also displays a countdown clock stating "4d, 22h, 51m, 51s," indicating that Dark Project has, or imminently will, post the Private Information stolen in the Data Breach on the dark web.[19]

26. Disturbingly, the post further contains blurred images of documents stolen in the Data Breach, including what appears to be scanned images of U.S. passports.

[18] *Id.*
[19] *Id.*

27. Dark Project employed tried and tested ransomware tactics in the Data Breach: it hacked Defendant's system to gain access to its network, it targeted and encrypted Plaintiff's and the Class's Private Information once inside, and it subsequently exfiltrated the data.

28. It is the *modus operandi* of Ransomware groups such as Dark Project to contact the hacked organization and demand a ransom payment, threatening to publish the stolen data if such a payment is not made.

29. On information and belief, Defendant has not made any public statements regarding Dark Project or whether it made a ransom payment.

30. However, even if Defendant made a ransom payment, there is no guarantee that the Private Information stolen in the Data Breach will be deleted.[20] The stolen data is valuable, and can easily be sold to another threat actor, so there is little incentive to delete it.[21]

31. Because of the Data Breach, Defendant's employees' Social Security numbers and other Private Information, such as their passports, were posted, or will be imminently posted, on the dark web, where they remain available for untold fraud and identity theft.

32. As is evident, Defendant cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

33. Worse still, Defendant has yet to provide direct written notice to Plaintiff and Class Members that their Private Information was taken without authorization, leaving them unaware of the need to take prompt action to protect themselves from further harm.

---

[20] Steve Adler, *Majority of Ransomware Victims That Pay a Ransom Suffer a Second Attack*, THE HIPAA JOURNAL (Feb. 23, 2024), https://www.hipaajournal.com/majority-of-ransomware-victims-that-pay-a-ransom-suffer-a-second-attack/.

[21] *Id.*

34. Because of the Data Breach and Defendant's failure to provide proper and timely notice, Plaintiff and Class Members are, and will remain, at risk that their data will be illegally used imminently and in the future.

35. And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[22]

36. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Private Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

***Plaintiff's Experiences and Injuries***

37. Plaintiff Diego Lizano is a former employee of Defendant.

38. Thus, Defendant obtained and maintained Plaintiff's Private Information.

39. As a result, Plaintiff was injured by Defendant's Data Breach.

40. As a condition of his employment with Defendant, Plaintiff provided Defendant with his PII. Defendant used that PII to facilitate its employment of Plaintiff, including payroll, and required Plaintiff to provide that PII in order to obtain employment and payment for that employment.

---

[22] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

41. Plaintiff provided Defendant with at least his name, address, Social Security number, date of birth, contact information, and his financial information to receive his paycheck via direct deposit.

42. On information and belief, this Private Information, including scanned documents containing Plaintiff's signature, was stored on Defendant's computer network at the time of the Data Breach and were stolen by Dark Project.

43. Plaintiff trusted that Defendant would use reasonable measures to protect his Private Information according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

44. Plaintiff reasonably understood that a portion of the funds derived from his employment would be used to pay for adequate cybersecurity and protection of Private Information.

45. Defendant has yet to contact Plaintiff about the Data Breach.

46. On information and belief, because of the Data Breach, Plaintiff's Private Information has already been published—or will be published imminently—by Dark Project or by other cybercriminals on the dark web.

47. Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft.

48. Plaintiff fears for the security of his Private Information and worries about what information was exposed in the Data Breach..

49. Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

50. Plaintiff suffered actual injury from the exposure and theft of his Private Information—which violates his rights to privacy.

51. Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's Private Information right in the hands of criminals.

52. Indeed, following the Data Breach, Plaintiff began experiencing spam and scam phone calls, suggesting that his Private Information has already been placed in the hands of cybercriminals.

53. The spam and scam communications Plaintiff is receiving are a distraction, must be blocked, and waste Plaintiff's time each day. Because the unwanted communications are being sent to the contract number Plaintiff provided to Defendant, Plaintiff believes that the unwanted communications are related to his contact information being stolen in the Data Breach.

54. Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

55. Today, Plaintiff has a continuing interest in ensuring that his Private Information—which, upon information and belief, remains backed up in Defendant' possession—is protected and safeguarded from additional breaches.

***Defendant Knew, Or Should Have Known, of the Risk Because Healthcare Entities In Possession of Private Information Are Particularly Susceptible to Cyber Attacks***

56. In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks, including ransomware attacks involving data theft, because warnings were readily available and accessible via the internet.

57. In 2024, a record 3,158 data breaches occurred—exposing approximately 1,350,835,988 sensitive records (i.e., 211% increase year over year).

58. As a custodian of Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class members, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members as a result of a breach.

59. Indeed, cyber-attacks, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, smaller entities that store Private Information are "attractive to ransomware criminals…because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[23]

---

[23] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

60. Additionally, as companies became more dependent on computer systems to run their business,[24] e.g., working remotely as a result of the Covid-19 pandemic, and the Internet of Things ("IoT"), the danger posed by cybercriminals is magnified, thereby highlighting the need for adequate administrative, physical, and technical safeguards.[25]

61. This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

62. In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted PII of thousands of its current and former employes in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and Defendant's type of business had cause to be particularly on guard against such an attack.

63. Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

---

[24] Danny Brando et al., *Implications of Cyber Risk for Financial Stability*, FEDS NOTES (May 12, 2022), https://www.federalreserve.gov/econres/notes/feds-notes/implications-of-cyber-risk-for-financial-stability-20220512.html.

[25] Dr. Suleyman Ozarslan, *Key Threats and Cyber Risks Facing Financial Services and Banking Firms in 2022*, PYCUS LABS, (Mar. 24, 2022), https://www.picussecurity.com/key-threats-and-cyber-risks-facing-financial-services-and-banking-firms-in-2022.

64. Prior to the Data Breach, Defendant knew or should have known that it should have encrypted its employees' Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

***Value of Private Information***

65. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."26 The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."27

66. The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.28

67. For example, Personal Information can be sold at a price ranging from $40 to $200.29 Criminals can also purchase access to entire company data breaches from $900 to $4,500.30

---

[26] 17 C.F.R. § 248.201 (2013).

[27] *Id.*

[28] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[29] Ben Luthi, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[30] *In the Dark*, VPNOVERVIEW, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Mar. 9, 2026).

68. For example, Social Security numbers are among the worst kind of Private Information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as experienced by Plaintiff and some Class Members, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[31]

69. What's more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

70. Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."32

71. Theft of PHI is gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get

---

[31] *Identity Theft and Your Social Security Number*, SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Mar. 9, 2026).

[32] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft.

other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."

72. According to account monitoring company LogDog, medical data sells for $50 and up on the dark web.33

73. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, PHI, and name.

74. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."34

75. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

76. The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

---

[33] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, NAKED SECURITY (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content.

[34] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[35]

77. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

***Defendant Fails to Comply with FTC Guidelines***

78. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

79. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal patient information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies to correct any security problems.36

80. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone

---

[35] *Report to Congressional Requesters* at 29, GAO (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

[36] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.37

81. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

82. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect patient data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet its data security obligations.

83. These FTC enforcement actions include actions against healthcare entities, like Defendant. See, e.g., In the Matter of LabMD, Inc., a corp, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

84. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant's, of failing to use reasonable measures to protect Private

---

[37] *Id.*

Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

85. Defendant failed to properly implement basic data security practices.

86. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to its employees' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

87. Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of its employees. Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

***Defendant Fails to Comply with Industry Standards***

88. As noted above, experts studying cyber security routinely identify entities in possession of Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

89. Several best practices have been identified that, at a minimum, should be implemented by healthcare entities in possession of Private Information, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data.

90. Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

91. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

92. These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and upon information and belief, Defendant failed to comply with at least one––or all––of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

***Defendant Breached Its Duties to Safeguard Plaintiff's and Class Members' Private Information***

93. In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry

standards and requirements, and to ensure that its computer systems, networks, and protocols adequately Defendant the Private Information of Class Members

94. Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data and failed to audit, monitor, or ensure the integrity of its data security practices. Defendant unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b. Failing to adequately protect its employees' Private Information;

c. Failing to limit the sharing of personal information on third party networks;

d. Failing to audit, monitor, or ensure the integrity of its data security practices;

e. Failing to sufficiently train its employees and vendors regarding the proper handling of employees' Private Information;

f. Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

g. Failing to adhere to HIPAA guidelines and industry standards for cybersecurity as discussed above; and,

h. Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

95. Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access the unsecured and unencrypted Private Information.

96. Had Defendant remedied the deficiencies in its information storage and security practices or those of its vendors and affiliates, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

**CLASS ACTION ALLEGATIONS**

97. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII was compromised in the Data Breach, including all those individuals who received notice of the breach.

98. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

99. Plaintiff reserves the right to amend the class definition.

100. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

101. <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

102. <u>Numerosity</u>. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least 100 members.

103. Typicality. Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

104. Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

105. Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class members—for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

a. if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII/PHI;

b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. if Defendant was negligent in maintaining, protecting, and securing PII/PHI;

d. if Defendant breached contract promises to safeguard Plaintiff and the Class's PII/PHI;

e. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. if the Data Breach caused Plaintiff and the Class injuries;

g. what the proper damages measure is; and

h. if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

106. Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Gross Negligence**
**(On Behalf of Plaintiff and the Class)**

107. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

108. Plaintiff and the Class entrusted their Private Information to Defendant on the premise and with the understanding that Defendant would safeguard his PII, use his PII for business purposes only, and/or not disclose this PII to unauthorized third parties.

109. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and

protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

110. Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

111. Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

112. Defendant owed—to Plaintiff and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the PII in its care and custody;

b. implement, or ensure its third-party agents implement, industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized use;

c. promptly detect attempts at unauthorized access; and

d. notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their Private Information.

113. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

114. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC

publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class Members' sensitive PII.

115. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

116. Defendant additionally owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

117. Defendant also had a duty to exercise appropriate clearinghouse practices to remove (or ensure its third-party agents removed) PII it was no longer required to retain under applicable regulations.

118. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

119. Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship

arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining employment from Defendant.

120. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant (or its third-party agents) hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's (or its third-party agent's) databases containing the PII —whether by malware or otherwise.

121. PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

122. Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

123. Defendant breached these duties as evidenced by the Data Breach.

124. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

125. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injuries.

126. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class Members' injuries-in-fact.

127. The specific reckless and grossly negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' PII;

b. Failing to adequately monitor the security of its networks and systems and to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of employee information;

c. Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards;

d. Failing to detect the breach at the time it began or within a reasonable time

e. thereafter; and

f. Failing to follow its own privacy policies and practices published to its employees and residents.

128. Defendant's conduct went far beyond ordinary negligence. Defendant acted with gross negligence by consciously and recklessly disregarding known risks to Plaintiff's PII, including by failing to implement basic and industry-standard cybersecurity measures, failing to adequately monitor its systems for unauthorized access, failing to remediate known security vulnerabilities, failing to properly train employees on data security, and failing to timely detect and prevent the Data Breach. Defendant knew or should have known that its inadequate data-security

practices created a high probability of harm to Plaintiff and the Class, yet Defendant consciously failed to take reasonable steps to prevent that harm.

129. Defendant's grossly negligent conduct demonstrated a substantial lack of concern for whether injury would result to Plaintiff and the Class. Defendant's actions and omissions constituted a reckless indifference to the rights, safety, and interests of Plaintiff and the Class, whose sensitive personal information Defendant was entrusted to protect.

130. Defendant's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on Defendant's (or its third-party agents') systems.

131. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

132. And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the dark web.

133. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**<u>SECOND CAUSE OF ACTION</u>**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

134. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

135. Plaintiff and Class members were required to provide their PII/PHI to Defendant as a condition of receiving employment provided by Defendant. Plaintiff and Class members provided their PII/PHI to Defendant in exchange for employment.

136. Plaintiff and Class members reasonably understood that a portion of the funds derived from his labor would be used to pay for adequate cybersecurity measures.

137. Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

138. Plaintiff and the Class members accepted Defendant's offers by disclosing their PII/PHI to Defendant or its third-party agents in exchange for employment.

139. In turn, and through internal policies, Defendant agreed to protect and not disclose the PII/PHI to unauthorized persons.

140. In its Privacy Policy, Defendant represented that it had a legal duty to protect Plaintiff's and Class Member's PII/PHI.

141. Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class members with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

142. After all, Plaintiff and Class members would not have entrusted their PII/PHI to Defendant in the absence of such an agreement with Defendant.

143. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

144. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

145. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

146. Defendant materially breached the contracts it entered with Plaintiff and Class members by:

a. failing to safeguard their information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic PII/PHI that Defendant created, received, maintained, and transmitted.

147. In these and other ways, Defendant violated its duty of good faith and fair dealing.

148. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class members' injuries (as detailed *supra*).

149. And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

150. Plaintiff and Class members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

151. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

152. This claim is pleaded in the alternative to the breach of implied contract claim.

153. Plaintiff and Class members conferred a benefit upon Defendant. After all, Defendant benefitted from:

a. using their PII/PHI to facilitate employment and/or the provision of goods and/or services; and/or

b. deriving profit from their payment for goods and/or services;

154. Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class members.

155. Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

156. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' PII/PHI.

157. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

158. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class members' employment and/or payment because Defendant failed to adequately protect their PII/PHI.

159. Plaintiff and Class members have no adequate remedy at law.

160. Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that it received because of its misconduct.

**FOURTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

161. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

162. Given the relationship between Defendant and Plaintiff and Class members, where Defendant became guardian of Plaintiff's and Class members' PII/PHI, Defendant became a fiduciary by its undertaking and guardianship of the PII/PHI, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII/PHI; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

163. Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their PII/PHI.

164. Because of the highly sensitive nature of the PII/PHI, Plaintiff and Class members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII/PHI had they known the reality of Defendant's inadequate data security practices.

165. Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII/PHI.

166. Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

167. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**<u>FIFTH CAUSE OF ACTION</u>**
**Violation of the New York Deceptive Trade Practices Act**
**New York Gen. Bus. Law § 349**
**(On Behalf of Plaintiff and the Class)**

168. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

169. Section 349 of the New York Deceptive Trade Practices Act ("GBL") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]" N.Y. G.B.L. § 349(a).

170. Section 349 applies to Defendant because Defendant engages in "business, trade or commerce or in the furnishing of any service" within New York. *Id*.

171. Defendant violated § 349 by, *inter alia*:

a. failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' PII/PHI, which was a direct and proximate cause of the Data Breach;

b. failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII/PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*., which was a direct and proximate cause of the Data Breach;

d. omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class members' PII/PHI; and

e. omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII/PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

172. Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their PII/PHI.

173. Defendant intended to mislead Plaintiff and Class members and induce them to rely on its omissions.

174. Had Defendant disclosed to Plaintiff and Class members that its data systems were not secure—and thus vulnerable to attack—Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant accepted the PII/PHI that Plaintiff and Class members entrusted to it while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and Class members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

175. Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class members' rights.

176. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII/PHI.

177. And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

178. Plaintiff and Class members seek all monetary and non-monetary relief allowed by law.

## SIXTH CAUSE OF ACTION
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

179. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

180. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

181. In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

182. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

b. Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c. Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

d. Defendant's breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class members.

183. The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

184. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

185. And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class members' injuries.

186. If an injunction is not issued, the resulting hardship to Plaintiff and Class members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

187. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

**PRAYER FOR RELIEF**

Plaintiff and Class members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendant from further unfair and/or deceptive practices;

E. Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting other relief that this Court finds appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

Date: August 7, 2026

Respectfully submitted,

By: *<u>/s/Leanna A. Loginov</u>*
Leanna A. Loginov
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 705
Miami, FL 33132
T: (305) 479-2299
E: lloginov@shamisgentile.com

Raina Borrelli*
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
raina@straussborrelli.com
**Pro hac vice forthcoming*

*Attorneys for Plaintiff and Proposed Class*